UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DONNA J. COONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-CV-00113-JSD |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION</u>**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Martin J. O'Malley, Commissioner of Social Security (the "Commissioner"), denying the application of Plaintiff Donna J. Coons ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). [ECF No. 9]. Because the decision denying benefits was supported by substantial evidence, this Court affirms the Commissioner's denial of Plaintiff's application.

---

[1] Martin J. O'Malley became the Acting Commissioner of Social Security on December 30, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### I. FACTUAL BACKGROUND

At the September 2022 hearing before the Administrative Law Judge ("ALJ"), Plaintiff testified as follows. (Tr. 54-78): She was injured on December 28, 2018, when she lifted a client while working as her caretaker. She was fired from that position February 4, 2020, and has been unable to work since then. (Tr. 69). Her injury resulted in neuropathy from the backs of her thighs down to her feet (Tr. 76), as well as an inability to place weight on her right side (Tr. 70). She alleged that she has to use a cane when going out of the house (Tr. 70) and suffers pain when standing more than fifteen minutes (Tr. 75). She has suffered from anxiety since her accident which worsens when she has to perform physical tasks such as taking out the trash. (Tr. 77). When asked about her anxiety, Coons stated, "I worry about everything. Everything. I've been worried for the last two years, you know, about this situation, not being able to work. . . . Everything's due to my physical injuries." (Tr. 77).

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

### II. PROCEDURAL BACKGROUND

On February 11, 2021, and May 11, 2021, Plaintiff applied for DIB and SSI respectively, alleging that she had been unable to work since February 4, 2021, due to back injury, chronic back pain, inability to lift over 5-10 lbs., difficulty walking and standing, diabetes, neuropathy, frequent urination/incontinence, HBP and cholesterol, depression and anxiety, and alcoholism. (Tr. 97). Both her DIB and SSI applications were initially denied. (Tr. 131-40). Plaintiff then filed a Request for Hearing by an ALJ (Tr. 37). After a hearing, the ALJ issued an unfavorable decision

on Sep. 26, 2022 (Tr. 34). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council on October 25, 2022, but the Appeals Council declined to review the case on April 27, 2023. (Tr. 1-4). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

### III.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then

3

the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers

4

the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

## II.    THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 4, 2020, the alleged onset date; that Plaintiff had the severe impairments of degenerative disc disease with radiculopathy, diabetes mellitus with peripheral neuropathy, and obesity. The ALJ also found that Plaintiff had the following non-severe physical impairments: hypertension and hyperlipidemia, (Tr. 40); and the following non-severe mental impairments: major depressive disorder, generalized anxiety disorder, and alcohol use disorder. (Tr. 40). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 42).

The ALJ determined that Plaintiff had the following RFC:

> [T]he claimant is able to provide home health care to her roommate. She can walk with a steady and independent, albeit slow, gait and does not exhibit any difficulties with sitting or transfers. Her strength is largely intact, and she retains full range of motion. Moreover, she has been able to

> attend medical appointments without any observed position changes. Considering all of these things together, the undersigned concludes that the claimant would be able to perform the standing, sitting, walking, and lifting required of light work without requiring additional breaks. Work at higher exertion levels is precluded due to the potential for lifting over 20 pounds to exacerbate the claimant's pain. Certain postural activities are also limited for this same reason.

(Citations omitted) (Tr. 46). Moving to Step Four, the ALJ found that Plaintiff could perform past relevant work as a customer service representative and a food service manager. (Tr. 47). Therefore, the ALJ concluded that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 48).

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) the ALJ's finding that Coons' depression and anxiety were non-severe is not supported by substantial evidence; and (2) the ALJ erred in failing to evaluate whether Coons' mental impairments impacted her ability to do the more complex tasks required of her past relevant work.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted); *see also*

6

*Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Parte v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B.  Severe Mental Impairments

Plaintiff's first argument is that the ALJ's finding that Coons' depression and anxiety were non-severe is not supported by substantial evidence. This Court disagrees.

At Step Two, the ALJ must determine whether the claimant has "a severe medically determinable physical or mental impairment," or "a combination of impairments that is severe," that lasted or is expected to last for at least twelve months. *See* 20 C.F.R. §§ 404.1509, 416.909; 404.1520(a)(4)(ii); 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including, among other things, understanding,

7

carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b).

While the requirement of severity is "not a toothless standard," it is also not an "onerous requirement." *Kirby v. Astrue*, 500 F.3d at 707. Though it is Plaintiff's burden to prove the existence of severe impairments, "the burden of a claimant at this stage of the analysis is not great." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Id*. (quoting *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)). Further, the ALJ may not "pick and choose only evidence in the record buttressing his conclusion." *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004).

Plaintiff argues that the ALJ relied on outdated State agency opinions, [ECF No. 17 at 4], which do not constitute substantial evidence [ECF No. 17 at 2]. Plaintiff also asserts that the ALJ's evaluation ignored the supportive findings on mental status examinations, which included depressed, dysphoric, sad, anxious, and/or tearful affect, thought content characterized by hopelessness or worthlessness, poverty of thought, avoidant, guarded, and suspicious behavior, decreased or agitated body movement, decreased rate and soft speech, and bad short term memory problems. [ECF No. 13 at 3-4].

This Court observes that the ALJ cited a number of medical records to support the conclusion that Plaintiff's mental impairments were non-severe. The ALJ found that Plaintiff's mental impairments caused only mild limitations in the four mental functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and

8

adapt or manage oneself ("paragraph B criteria"). (Tr. 40-41); 20 C.F.R. §§ 416.920a(c)(3)-(4). Beyond the paragraph B criteria alone, the ALJ examined evidence on the record and found that it does not otherwise indicate severe mental limitations. (Tr. 41). For instance, Plaintiff was able to use public transportation and did not have issues interacting with others (Tr. 280-81). Plaintiff herself denied difficulties with concentration (Tr. 348, 422) and could play boardgames, pay bills, watch TV, and complete chores (Tr. 277-78). She also provided "constant care" for her roommate (Tr. 70-71). Although Plaintiff stated that she suffered from issues with memory, the record indicates normal memory (Tr. 391, 543, 733, 743). Plaintiff has suffered from alcoholism and depression but has been sober for a significant period (Tr. 71) and denied thoughts of suicide (Tr. 332, 391, 412, 733).

Plaintiff opines that the ALJ failed to consider "more supportive findings on mental status examination…[which] detract from the ALJ's finding that Coons' mental conditions were not severe," and points out that an ALJ "is not permitted to pick and choose evidence in support of his conclusion." [ECF No. 13 at 3-4].

This Court finds that far from merely picking and choosing only the evidence supporting his conclusion, the ALJ provided compelling reasons to find contrary evidence unpersuasive. Much of the evidence suggesting that Plaintiff suffers from greater mental and physical limitations come from Dr. Edward Doyle. This Court agrees with the ALJ that many of Dr. Doyle's conclusions are unsupported. For instance, Dr. Doyle stated that the claimant needs to use a cane (Tr. 725-26). However, there were no findings of cane use by other medical personnel, despite the claimant's testimony that she uses a cane when going to doctors' appointments (Tr. 70). Similarly, Dr. Doyle's extreme limitations on the claimant's ability to lift and stand "are inconsistent with the objective medical evidence discussed in this decision, the consultative examination results, the

9

conservative treatment prescribed to the claimant, and her activities of daily living." (Tr. 46). Although Dr. Doyle was the claimant's treating physician, "[s]uch opinions are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data. *Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004) (quoting *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996)); *see also Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) ("A treating physician's own inconsistency may [] undermine his opinion and diminish or eliminate the weight given his opinions.")

The ALJ found that Dr. Doyle's conclusions about Plaintiff's mental impairments are similarly inconsistent with the record and do not seem to be largely supported by his own mental status examinations. (Tr. 46-47). Indeed, Dr. Doyle's opinions are "unsupported by the largely normal mental status examination results recorded in his own treatment notes" (Tr. 46, 386-400). This Court finds that the ALJ weighed all the evidence before him. The fact that he found particular evidence uncredible and unpersuasive does not amount to him failing to consider it at all. Therefore, this Court will "not reweigh the evidence presented to the ALJ," *Renstrom v. Astrue*, 680 F.3d at 1064, but will defer to his judgement.

Plaintiff argues that the Eighth Circuit held in *Noerper v. Saul* that, "outdated opinions from non-examining physicians do not constitute substantial evidence," and therefore by relying on earlier opinions than that of Dr. Doyle, the ALJ did not have substantial evidence for his own judgement. 964 F.3d 738, 745 (8th Cir. 2020). However, in *Noerper* the Eighth Circuit was far more concerned with how one opinion was "more detailed" than the one upon which the ALJ relied. *Id.* The Eighth Circuit noted that "the agency is to place more weight on the opinions of specialists over generalists where opinions conflict and evidence does not otherwise provide

10

reasons for rejecting the specialist's opinion." *Noerper v. Saul*, 964 F.3d at 745. The Eighth Circuit also found that "the ALJ did not explain the reasons for discounting [one doctor] in favor of [another]." *Id.* at 745. In other words, the Eighth Circuit found that ALJ erred by failing to provide reasoning for relying on a primary care physician's opinion when a specialized orthopedist's opinion provided far more detail. In *Noerper*, the issue was not the temporal relationship of the opinions that the ALJ weighed.

Here, unlike in *Noerper*, the ALJ explained the reasons for discounting Dr. Doyle in favor of earlier medical examinations. (Tr. 46). While the court in *Noerper* decided that the ALJ erred by relying on a generalist instead of a specialist, here Plaintiff tries to argue that this Court should rely on a generalist that the ALJ has found unpersuasive for convincing reasons. Therefore, this Court does not find that *Noerper* compels the finding that certain evidence weighed by the ALJ was not substantial evidence.

This Court holds that the ALJ's finding that Plaintiff's depression and anxiety were non-severe is supported by substantial evidence.

### C. Non-Severe Mental Impairments and RFC

Plaintiff's second argument is that the ALJ erred in failing to evaluate whether Coons' mental impairments impacted her ability to perform the more complex tasks required of her past relevant work. [ECF No. 13 at 9]. This Court holds that the ALJ appropriately evaluated Coons' mental impairments when determining RFC and at Step Four.

Even when an ALJ's analysis of paragraph B criteria finds that a claimant has mental limitations, these limitations need not necessarily appear in the subsequent RFC: "The fact that the ALJ concluded for purposes of step two that Claimant's mental impairments were "mild" and not "none" does not mean that an RFC must include mental functioning limitations. Rather, when

11

mental impairments are not severe, they still must be evaluated for purposes of steps four and five and the ALJ must make an assessment of Claimant's mental impairment in the context of determining an appropriate RFC." *Kelly T. v. Kijakazi*, No. 20-CV-1915 (WMW/DTS), 2022 WL 507609, at *4 (D. Minn. Jan. 26, 2022), report and recommendation adopted, No. 20-CV-1915 (WMW/DTS), 2022 WL 507390 (D. Minn. Feb. 18, 2022*)*. ALJs "must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *Id.* at *10 (quoting SSR 96-8p, 1996 WL 374184, at *4 (S.S.A, July 2, 1996)); *see also Lacroix v. Barnhart*, 465 F.3d 881, 888, n.3 (8th Cir. 2006) ("Each step in the disability determination entails a separate analysis and legal standard.")

"Mild limitations identified at Step Two using the "special technique"[2] do not require corresponding RFC limitations." *Wymer v. Saul,* No. 4:19-CV-2616-MTS, 2021 WL 1889870, at *9 (E.D. Mo. May 11, 2021); *see also Taylor v. Berryhill*, No. 4:17-cv-01050-DGK-SSA, 2018 WL 5410977, at *2-3 (W.D. Mo. Oct. 29, 2018) (rejecting the argument that the "ALJ erred by failing to incorporate the mild limitations in the [psychiatric review technique] analysis from Steps Two and Three into mental limitations on his RFC at Step Four" and explaining the differences between the use of the "psychiatric review technique" (PRT) at Steps Two and Three and the function of the RFC assessment at Step Four); *Johnson v. Berryhill*, No. 4:17-cv-0416-DGK-SSA, 2018 WL 2336297, at *2 (W.D. Mo. May 23, 2018); *Browning v. Colvin*, No. 13-00266-cv-REL, 2014 WL 4829534, at *37 (W.D. Mo. Sept. 29, 2014) ("While it is true that the ALJ did not include his finding of plaintiff's mild difficulties in concentration, persistence, and pace in the assessment,

---

[2] The "special technique" is the process outlined in 20 C.F.R. § 404.1520a to evaluate the severity of a claimant's mental impairments. *Wymer v. Saul*, 2021 WL 1889870, at *9; *see also Cuthrell v. Astrue*, 702 F.3d 1114, 1117 (8th Cir. 2013).

12

there was no requirement that he do so. Mild limitations in any of the four domains of mental functioning are non-severe and therefore by definition cause no work-related limitations of function." (citations omitted)); *Crissey v. Saul*, No. 4:20-CV-00476-WJE, 2021 WL 2624514, at *4 (W.D. Mo. June 25, 2021).

In this case, the ALJ evaluated Plaintiff's mental limitations. While considering Plaintiff's RFC, the ALJ spent a considerable amount of time justifying why "[the] claimant's allegations and self-reports are not a reliable basis for determining the severity and limiting effects of her impairments." (Tr. 46). As noted above, the ALJ found Dr. Doyle's opinions unpersuasive based on inconsistencies between Dr. Doyle's findings and those of the overall record. (Tr. 46-47). The ALJ considered not only the record but Plaintiff's own presentation at the hearing as well as evidence of her daily living activities. The ALJ went on to justify his reliance on the evidence provided by the prior administrative medical findings: "[T]he state agency psychological consultants include their evaluation of the paragraph B criteria and the ultimate determination that the claimant's mental impairments do not cause more than minimal limitations on the ability to work. These findings are supported by a discussion of the consultative examination results and the clinical findings of providers, which were noted to be 'essentially normal.'" (Tr. 47).

This Court holds that the ALJ properly appraised Plaintiff's mental limitations while formulating an appropriate RFC. Indeed, he spent a considerable amount of time explaining how he weighed the evidence when formulating the RFC. The absence mental health limitations in the final RFC does not demonstrate that the ALJ failed to evaluate those limitations, but rather indicates that the ALJ did not find those limitations impacted the ultimate RFC limitations.

**VI.    CONCLUSION**

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**. A separate Judgment will accompany this Order.

**IT IS FURTHER ORDERED** that the Clerk shall reflect on the docket that Martin O'Malley, Commissioner of Social Security, is the proper defendant pursuant to Fed. R. Civ. P. 25(d).

_____
JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE


Dated this 7th day of August, 2024.